(38 South. 692.)

No. 15,525.

J. GROSSMAN'S SONS v. SANDERS, Sheriff, et al.

(May 22, 1905.)

SIMULATED SALE — DECLARATION DE SIMULATION—PARTIES—RENT CLAIM—DONATION OR SALE—JUDGMENT.

1. The property was sold partly cash, and partly on time. The vendors were in good faith, and sold to the vendee without reference to any agreement or understanding between their vendee and her father. They had a right to select their vendee, and no change can be made under the circumstances whereby the father can be substituted to the daughter as vendee, and this without the least notice to the vendors.

2. The vendors were necessary parties to the suit. It does not appear that the contract was a mere simulation. Some valid consideration passed between the parties.

This is additional reason rendering it necessary to make parties.

3. The vendors were third persons who chose to sell the rent claim due by the father of the vendee to the vendee, without special mention made of this claim in a deed in which they sold immovable property to this vendee.

4. Whether considered as a donation or a sale, the matter of form is not something of which a creditor can avail himself to have the property considered as property of their debtor, and this without citing and making the vendors parties to the suit which affects their contract.

5. The judgment obtained on this rent claim had valid consideration. In addition, the claim, without reference to the judgment, was secured by the lessor's privilege, which gave intervener standing to claim the proceeds.

The manner of executing the judgment was not prejudicial error.

6. The rent claim is reduced to the amount due by deducting a sum due by the former lessor.

(Syllabus by the Court.)

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Albert Campbell Allen, Judge.

Action by J. Grossman's Sons against John B. Sanders, sheriff, and others. Judgment for defendants, and plaintiffs appeal. Modified.

Charles Frank Borah and Percy Saint, for appellants. Henry Mayer, McCaleb, McCaleb & Leopold, for appellee.

BREAUX, C. J. This is a suit en declaration de simulation, plaintiffs in their pleadings alleging that the title under which the vendee, Mattie L. Kramer, holds possession of certain real property, consisting of two lots in the town of Franklin, and the title under which she claims to own certain rent claims due by her father, are not real, but simulated; that she is an interposed person, and her name was used as buyer to protect her father, who is an insolvent.

Plaintiffs are judgment creditors of Charles F. Kramer, the father just referred to, in the sum of $249.80. This judgment was obtained in 1884, and was revived in 1894 and duly recorded.

The pleadings show that the property of Charles F. Kramer was seized under this judgment, consisting of horses, carriages, and other property. It was also seized under a rent claim which Mattie L. Kramer held against her father, Charles F. Kramer.

Plaintiffs found that Mattie L. Kramer, daughter of their debtor, Charles F. Kramer, had claims, real or fictitious (as they thought), which were in the way of the execution of their judgment.

The claims of Mattie L. Kramer consisted of the title to the lots before mentioned and to the rent claim. Plaintiffs' grounds of attack are that their debtor's daughter, Mattie L. Kramer, had no means wherewith to buy this property; that the purpose of the transaction between her and her cousins, the heirs of Louis Kramer, who was the brother of Charles F. Kramer, was to shield her father in his business, as he, on account of his debts, could not own property.

Plaintiffs specifically charge that part of the price of the lots of ground before mentioned was raised by the debtor, who represented in the district court that the business at the time in the name of Charles F. Kramer, tutor, and for his minor children (including Mattie L. Kramer, who was subsequently emancipated), was not sufficient to maintain and educate the children, and that it was necessary to mortgage their property for that purpose.

That a family meeting was called, the usual recommendation obtained, and thereafter a mortgage was executed, an amount obtained, which the tutor, Charles F. Kramer, did not use to maintain and educate his children, but to pay the balance due on the price of the property bought by Mattie L. Kramer from the Louis Kramer heirs. They allege that Mattie L. Kramer is not the owner, and that the property is owned by Charles F. Kramer, and that, as such, it should be decreed that it is subject to plaintiffs' seizure under their said judgment.

Mattie L. Kramer controverts these charges of plaintiffs, and says that she is a bona fide owner of the property for a fair and full consideration; that William Kramer and others, heirs of Louis Kramer, from whom she bought, offered her the immovable property for $4,500, and at the same time agreed that they would transfer and assign to her the rent in question due to them (the Louis Kramer heirs) by her father, on condition that she would buy the town lots in question; that nothing over and above the price would be charged for the rent claim; that she bought on that condition, and became the

owner of the rent claim, and of the town lots as well.

After Mattie L. Kramer had thus become the owner of the lots and the rent claim, she brought suit against her father, in which she claimed the amount of rent due, and asked for the recognition of the lessor's privilege securing the rent claim due by her father, Charles F. Kramer. The debtor of this rent, Charles F. Kramer, confessed judgment immediately after this suit had been filed. Judgment was rendered, and a writ of fi. fa. was issued in short order, and the movable property of Charles F. Kramer was seized.

The contention of the plaintiffs, Grossman & Sons, in regard to this rent, is that it had been paid at the time of the asserted transfer of the lots in question, but that, if there ever was a claim for rent due as asserted, it never became the property of Mattie L. Kramer, but that it became the property of Charles F. Kramer, the real purchaser of the lots; that the only purpose in view by Mattie L. Kramer and her said father was to seize the movable property and defraud his creditors; that all their acts in the premises are collusive and simulated.

The property seized as before mentioned was offered for sale on April 23, 1904. It was not sold, as no one offered two-thirds of the appraised value. Matters remained in statu quo until, the 6th day of May following, the sheriff readvertised the property.

The complaint of plaintiffs at this point is that this writ under which the property had been seized by Mattie L. Kramer had expired by limitation, and in consequence the seizure had elapsed, and the sheriff no longer could claim that he had the legal possession required to enable him to sell. The property was sold under a fi. fa. issued at the instance of Grossman & Sons. Mattie L. Kramer retained whatever right she had to the proceeds by filing a third opposition claiming these rights.

In the course of the proceedings, plaintiffs,

114 LA.—31

Grossman & Sons, obtained an injunction restraining the sheriff from proceeding further with the sale of the property under a fi. fa. which issued at the instance of Mattie L. Kramer, and, in addition, they asked that Mattie L. Kramer be decreed to be a person interposed, and all the acts and proceedings connected with the sales and transfers to Mattie L. Kramer before referred to be decreed simulated; and that it be also decreed that Charles F. Kramer is the owner of the property bought in the name of Mattie L. Kramer, and that in consequence they have the right to have said property seized and sold for their account.

These are about all the facts needful to be considered in the decision of the case.

The district court rendered judgment in favor of the defendants. Plaintiffs appeal.

We take up for decision the questions growing out of the sale of real property made by the Kramer heirs (i. e., William Kramer and others, heirs of Louis Kramer) to Mattie L. Kramer.

At the outset it occurs to us that the vendors, William Kramer and others to Mattie L. Kramer, were necessary parties to this suit.

If there has been fraud committed, if the sale be simulated, and the young lady before named is an interposed party, it is not alleged or shown that the said vendors were aware of such illegal acts. Plaintiffs themselves do not question the verity of the sale (William Kramer et al. to Mathilde L. Kramer) to the extent that the vendors are concerned.

Notwithstanding that a buyer places the name of the property in the name of another, the sale cannot be annulled without making the vendors who are in good faith parties.

They, William Kramer and others, have sold to one person; their vendee cannot be changed in a transaction in which they are entirely innocent of any wrong, and another buyer substituted to the buyer of their choice.

They hold notes of their vendee, Mathilde L. Kramer, secured by mortgage and vendors' privilege. The action of plaintiffs, if sustained, would change the debtor of a claim thus secured, and place another in his stead, without giving an opportunity to the creditor to be heard. They (the Kramer heirs) have not entered into any contract with Charles F. Kramer.

The sale, to the extent that vendors, Kramer and others, are concerned, is entirely legal and valid in the form in which it was made. They had the right to select the buyer to whom they sold.

To decree that they have not sold to this buyer, in the absence of all notice to them, would be assuming an authority not sanctioned by any decision of this court. No one who has acted legally and acquired a right can be affected in that right without due notice. They could not be held bound by the decree. They could still insist that their vendee, Mathilde L. Kramer, is their debtor.

If this were carried out to a practical conclusion, there would be two debtors: One, Charles F. Kramer, owner of the property under the decree of this court; and the other, Mathilde L. Kramer, to whom William Kramer and others sold. This dual condition must be avoided. It can receive no recognition under our rules of practice.

We have heretofore considered plaintiffs' cause from the point of view that the vendors, William Kramer et al., were in good faith—a good faith conceded by plaintiff.

Conceding that Mattie L. Kramer and her father sought an undue advantage, William Kramer et al., vendors, are still necessary parties to the suit.

After having gone over the record, we are not inclined to the view that the charge of simulation is not substantiated by the testimony. Unquestionably some valid consideration passed from the vendee, Mattie L. Kramer, to the Kramer heirs.

We will not take up every item of pay-

ment made by this vendee in detail, and discuss them one after the other.

The testimony conclusively shows that, at most, only part of the amount was furnished by the father, Charles F. Kramer.

Plaintiffs charge that a sum borrowed under the guise of supporting and educating his children, including Mattie L. Kramer, who had not at that time been emancipated, was expended in paying the cash portion of the purchase price, and it was not applied to the maintenance and education of his minor children. If that be as charged, the property bought would not be the property of Charles. F. Kramer, nor would Mattie L. Kramer be his debtor for the amount. A part was due her, and the remainder to her minor coheirs. It was a wrong on the part of Charles F. Kramer which he should not have committed. None the less, it does not have the effect of vesting him with a title to the property, because the amount went to the payment of part of the price

The testimony shows directly, as to a large part of the purchase price, that it was paid by Mattie L. Kramer with the assistance of relatives who chose to lend her money for the purpose. The notes remaining unpaid, representing the credit portion of the purchase price, are due by her, and not by Charles F. Kramer.

Simulation not having been shown, it follows that the transaction between Mattie L. Kramer cannot be annulled without first making her vendors parties to the suit.

We think we can go one step further and hold that, under the facts and circumstances as made to appear by the testimony, she is the owner of the property. But be this as it may, we are quite certain that the transaction cannot be considered a downright simulation; it is not a corpus sine anima, which can be brushed aside without special notice to any one.

Plaintiffs, Grossman's Sons, inform the court that they are more particularly con-

cerned in the rent claim and in their attack on the judment obtained by Mathilde L. Kramer against her father, as before mentioned; that is, the judgment on this rent claim.

In addition to the want of parties, as before stated by us, it is evident this rent claim is subject to the objection that it must be owned either by the Kramer heirs, by whom it was sold to Mattie L. Kramer, or it belongs to Mattie L. Kramer. These vendors never, either directly or indirectly, sold it to Charles F. Kramer. The transaction was exclusively between the Kramer heirs and Mattie L. Kramer.

They had talked to others about selling the rent claim, and had always said that they would sell it with the town lots. Whoever bought the lots would have to buy this rent claim, and when they sold to Mattie L. Kramer they included the rent claim, although there is no special mention made of this claim in the deed of the town lots to her. She was their cousin, and we infer that they desired to favor her in preference to others who were willing to buy on the same conditions.

The form of the transfer of this rent claim can be of no concern to plaintiffs. They could do with this rent claim as they pleased; transfer it in such form as they chose, without giving right to plaintiff, the creditor of the father of the vendee, to object. They, the Kramer heirs, vendors of transferrors of this rent claim, aver in court that it is her claim, and that it forms part of other property sold by them to her. They also have an interest in the matter. There is no question of fraud or simulation between these vendors and their vendee. Plaintiffs cannot be allowed to seize this property from the vendee and donee, if she be a donee, and place it in the hands of their creditor, Charles F. Kramer, to whom the vendors never sold and never intended to sell.

It follows that the judgment attacked by plaintiffs had consideration. It was, it is true, a confession of judgment, and the confession was hastily made. We are not approving this unseemly haste. At the same time, what avail is it to the plaintiffs to attack the confession of judgment? Let us see.

The vendee, Mattie L. Kramer, seized the movable property of her father under her judgment. She also intervened in case here, viz., 15,523, setting up her rent claim. In the different steps taken she had the right to be heard as the holder of a rent claim secured by lessor's privilege, with or without judgment. It happens, in view of these facts, that plaintiffs are not prejudiced in their right as creditors to the extent that the amount is reduced by our decree.

This judgment was not an absolute nullity. It was binding on the parties to the judgment, and on third persons as well who do not show that their rights are injuriously affected by it.

We must say the amount of the judgment is too large. It should be reduced to $1,311.-79—the correct amount after having deducted proper credit.

Another of plaintiffs' grounds of objection is that the writ of fi. fa. under which the seizure had been made on behalf of Mattie L. Kramer was not returned within 30 days, and that in consequence the writ had expired.

This objection to her seizure, under the view we have taken of the case, is unnecessary to consider. She was entitled to a preference over plaintiffs because of her lessor's privilege. Moreover, the writ having been enjoined, it fell within the terms of article 700 of the Code of Practice, and was returned in due time. Because of the judgment staying the seizure, it had not lapsed.

Besides, the writ on its face was made returnable in 70 days, and it was returned executed in that time.

Plaintiffs' objections do not impress us as being sufficient to set aside proceedings at-

tacked. The judgment creditor had no right to the claim for the larger amount incorporated in her judgment as due.

The contention in behalf of the judgment creditor (Miss Mattie L. Kramer) is that the avails of the sale made of her creditor and father's property is less than $1,311.79, viz., that the proceeds of the sale are $900.

We have no proof of the fact before us that the amount realized is only $900; besides, it is proper that correction be made of the judgment.

Mattie L. Kramer and her father before her, as holder of the counterclaim which should have been credited, were indifferent about fixing the correct balance. It is proper to fix it now.

It is therefore ordered, adjudged, and decreed that the judgment of Miss Mattie L. Kramer be reduced as to amount from $2,167, besides interest from April 4, 1904, to $1,311.79, with interest at the rate of 5 per cent. per annum from April 4, 1904, and that appellee, Mattie L. Kramer, pay costs in both courts.

As amended, the judgment is affirmed.